IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

VICTOR BERRY, )
 )
    Plaintiff, )
 )
v. ) CASE NO. CV408-159
 )
MI-DAS LINE SA, TOKO KAIUN )
KAISHA LTD., d/b/a Toko Line, )
MITSUI O.S.K. LINES, and DOUN )
KISEN CO. LTD., )
 )
    Defendants. )
 )

## O R D E R

Before the Court is Defendants Mitsui O.S.K. Lines ("Mitsui") and Toko Kaiun Kaisha LTD's ("Toko") Motion for Summary Judgment. (Doc. 40.) For the following reasons, Defendants' Motion is **GRANTED**. Accordingly, Defendants Mitsui and Toko are **DISMISSED** from this action.

### BACKGROUND

This case involves an injury to Plaintiff Victor Berry while he was employed as a longshoreman.[1] Plaintiff alleges that he was injured while descending a gangway from a shipping vessel to a dock. (Doc. 1, Comp. ¶ 18.)

---

[1] This case was originally filed in the State Court of Chatham County. (Doc. 1.) Defendants invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332 and removed the action to this Court. (Id.)

Specifically, Plaintiff contends that while he was descending the gangway, a crewmember on the vessel negligently moved the gangway, causing him to fall and suffer substantial injuries. (Id. ¶¶ 17-18.) The vessel was owned, operated, captained, and crewed by Defendant Mi-Das Line SA ("Mi-Das").[2] (Id. ¶ 12.) At the time of the accident, the vessel had been time-chartered by Defendant Mitsui. (Id. ¶ 13.) Defendant Toko was employed as Defendant Mitsui's agent and was responsible for carrying out Defendant Mitsui's duties as the time-charterer. (Doc. 58 ¶ 3.)

In their Motion for Summary Judgment, Defendants Mitsui and Toko argue that, as time-charterers, they never had operational control over the vessel's crew. (Doc. 40 at 2.) Furthermore, Defendants Mutsui and Toko assert that they had no employees aboard the vessel at the time of the incident. (Id.) They contend that the lack of operational control precludes them from being liable for the crewmember's negligence, absent an agreement to the contrary. (Id.)

---

[2] Defendant Doun Kisen Co., Ltd. is the parent company of Defendant Mi-Das. (Doc. 51 ¶ 10.)

2

In its Response, Plaintiff concedes that a time-charterer who lacks operational control over the crew is not responsible for a crewmember's negligent act. (Doc. 58 ¶ 6.) However, Plaintiff contends that the Charter Agreement shows that Defendants Mitsui and Toko assumed responsibility for the crew during cargo loading and unloading, giving rise to liability in this case. (Id. ¶ 7.) Specifically, Plaintiff advances three lines of argument. First, recent caselaw suggests that the 1972 amendments to the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 902(21), redefined vessel to include time-charterers, making them liable for negligent acts by the vessel's crew. (Doc. 58, Brief in Opp. at 7-11). Second, certain amendments to the Charter Agreement give Defendants Mitsui and Toko operational control over the gangway during the loading and unloading of cargo. (Id. at 11-13). Finally, Defendant Mitsui assumed the duties of an owner when it entered into a management agreement with Defendant Toko. (Id. at 14.)

## ANALYSIS

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

3

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes).

For the purposes of Defendant Mitsui and Toko's Motion, the Parties agree on the relevant facts. The only remaining issues concern the interpretation of various clauses in the time-charter agreement, which are questions of law properly decided by this Court. See Odem v. Pace Acad., 235 Ga. App. 648, 652, 510 S.E.2d 326, 330 (1998).

I. 1972 Amendments to the Longshoremen and Harbor Workers' Compensation Act

Plaintiff argues that the case establishing that a time-charterer has no operational control over a vessel's crew, D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir. 1966),[3] may no longer be good law in the Eleventh Circuit. (Doc. 58, Brief in Opp. at 7). Specifically, Plaintiff reasons that the 1972 amendments to the LHWCA redefined vessel to

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4

include time-charterers, making them liable for negligent acts by the vessel's crew. (Id.); see 33 U.S.C. § 902(21).

The rule in this Circuit is that "[a] time charterer who has no control over a vessel assumes no liability for negligence of the crew . . . absent an agreement to the contrary." Hayes v. Wilh Wilhelmsen Enters., Ltd., 818 F.2d 1557, 1559 (11th Cir. 1987) (citing Mallard v. Aluminum Co. of Can., Ltd., 634 F.2d 236, 242 n.5 (5th Cir. 1981)). While the Eleventh Circuit has cast some doubt on the continued validity of this rule, it has stopped short of overruling it. Id. at 1559 n.1 ("[I]t is unclear whether the holding of D/S Ove Skou is still good law and binding precedent in this circuit. The 1972 amendments, which afford an injured longshoreman a right of action against a charterer for negligence, undercuts the rationale of D/S Ove Skou v. Hebert. At an appropriate time, the en banc court must address the continued vitality of that case."). "The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997). Because the Eleventh Circuit in Hayes applied the existing rule in the face of the 1972 amendments to the LHWCA, this Court is bound by that decision. Accordingly, Defendants Mitsui and

5

Toko are not liable for the crewmember's negligence based on their role as the vessel's time-charterer, entitling them to summary judgment on this issue.

II. Amendments to the Charter Agreement

Plaintiff argues that amendments to the Charter Agreement show that Defendants Mitsui and Toko assumed control over the vessel's crew with regard to gangway movement during the loading and unloading of cargo. Specifically, Plaintiff points to clauses sixty-six and sixty-seven of the agreement. Clause sixty-six states that "[g]angway watchmen ordered by Master shall be for Owners' account. Gangway watchmen for cargo shall be for Charters' account." (Doc. 40, Ex. A ¶ 66.) Clause sixty-seven provides that "[t]he vessel's officers and crew shall perform shaping up of the vessel's hatches and gangway prior to and upon arrival at a port, in order to commence loading and/or discharging operation without delay." (Id. ¶ 67.) This clause also states that "[t]he following services are included in hire and shall be rendered by officers and crew provided permitted by weather, local regulation without Charters paying any overtime[:] Preparation of cranes and/or gangways in preparation for loading and discharging." (Id.) The Plaintiff reasons that these amendments to the Charter Agreement indicate the

Defendants Mitsui and Toko "assumed responsibility for the actions of the master and crew during cargo operations specifically in regard to shaping and management of the gangway." (Doc. 58, Brief in Opp. at 13.)

A charter agreement must contain clear, express language to shift responsibility for a crewmember's negligence from a vessel's owner to a time-charterer. Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc., 830 F.2d 1332, 1343 (5th Cir. 1987); see Mallard, 634 F.2d at 242 n.5. ("[T]his circuit seems reluctant to find any shift of operational responsibility for personal injuries to the time charterer absent clear language to that effect.") In the traditional division of responsibilities, the vessel's owner is responsible for preparing the ship to be loaded or unloaded, which includes setting and operating the vessel's gangway. The time-charterer is responsible for carrying out loading and unloading activities. The provisions relied on by Plaintiff only reinforce this division of responsibility, not alter it. In any event, these provisions fall far short of the requirement that a shift in responsibility be clearly expressed in the agreement. Accordingly, Defendants Mitsui and Toko are not liable based on the amendments to the Charter Agreement, entitling them to summary judgment on this issue.

III. <u>Defendant Mitsui's Agreement with Defendant Toko</u>

Plaintiff argues that Defendant Mitsui assumed the same liability as the vessel's owner because the management agreement between Defendants Mitsui and Toko refers to Defendant Mitsui as the owner. (Doc. 58, Brief in Opp. at 14.) However, Plaintiff fails to explain how the agreement between Defendant Mitsui and Toko, a time-charterer and its agent, affects the traditional division of liability between a vessel's owner and a time-charterer. As discussed above, liability for a crewmember's negligence begins with a vessel's owner. <u>Hayes</u>, 818 F.2d at 1559. That liability can only be transferred by an agreement between the vessel's owner and another party. <u>Kerr-McGee</u>, 830 F.2d at 1343. Therefore, a contract between a time-charterer and its agent, to which the vessel's actual owner is not a party, cannot shift liability from the vessel's actual owner to another party. Accordingly, Defendant Mitsui is not liable based on its management agreement with Defendant Toko, entitling it to summary judgment on this issue.

## CONCLUSION

For the foregoing reasons reasons, Defendants Mitsui and Toko's Motion for Summary Judgment is **GRANTED**.

Accordingly, Defendants Mitsui and Toko are **DISMISSED** from this action.

SO ORDERED this 28th day of September, 2009.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA